IMANAKA ASATO, LLLC

| | |
|---|---|
| STEVEN K.S. CHUNG | 1751 |
| MICHAEL L. IOSUA | 9851 |
| TIMOTHY E. HO | 4526 |

745 Fort Street Mall, 17th Floor
Honolulu, Hawai`i 96813
Telephone No.: (808) 521-9500
Facsimile No.:  (808) 541-9050

Attorneys for Plaintiff
MARIA T. MCCLINTOCK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARIA T. MCCLINTOCK,<br><br>Plaintiff,<br><br>vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF PEARL RIDGE GARDENS AND PEARL RIDGE TOWERS, by and through Its Board of Directors, KAPONO F. H. KIAKONA, and PORTER MCGUIRE KIAKONA & CHOW, LLP,<br><br>Defendants.<br>_____ | CIVIL NO.<br>(Wrongful Foreclosure)<br><br>**COMPLAINT; DEMAND FOR JURY TRIAL** |

## COMPLAINT

Comes Now Plaintiff MARIA T. MCCLINTOCK, by and through her undersigned counsel, and for a Complaint against Defendants ASSOCIATION OF APARTMENT OWNERS OF PEARL RIDGE GARDENS AND PEARL RIDGE TOWERS, by and through Its Board of Directors, KAPONO F. H. KIAKONA and PORTER MCGUIRE KIAKONA & CHOW, LLP, alleges and avers as follows:

1.    This is an action against the defendant homeowner association and its attorney for wrongful foreclosure and violation of the Fair Debt Collections Practices Act.  Defendant homeowner association and its attorney sold plaintiff's condominium apartment at a public sale, utilizing the process set forth in Section 667-5 ("Part I") of the *Hawai'i Revised Statutes* ("HRS") as amended, despite the fact that the homeowner association did not possess a mortgage containing a power of sale and was not authorized to use Part I.

## JURISDICTION AND VENUE

2.    This Court has subject-matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 as the claim against attorney arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.

3.    This Court has personal jurisdiction over defendants because they are citizens of Hawai`i and regularly conduct business in this District, and because the nonjudicial foreclosure took place and involved real property located in this

District.  The Court also has supplemental jurisdiction over the state law claims

raised in this action pursuant to 28 U.S.C. § 1367(a).

4.     The venue is proper in this District pursuant to: (1) 28 U.S.C. §

1391(b)(1) in that defendants are located in this State; (2) 28 U.S.C. § 1391(b)(2)

in that a substantial part of the events or omissions giving rise to plaintiff's claims

occurred in this District; and (3) 28 U.S.C. § 1391(b)(3) in that defendants are

subject to personal jurisdiction in this District.

## PARTIES

5.     Plaintiff MARIA T. MCCLINTOCK, formerly known as MARIA T.

SEGI ("MCCLINTOCK"), is a citizen of the State of Hawai`i.  At the times

relevant herein, MCCLINTOCK owned Apartment No. 5-311 ("Apartment") of

the Pearl Ridge Gardens & Towers condominium project, located at 98-1030

Moanalua Road, Aiea, Island of O'ahu, State of Hawai'i.

6.     Defendant ASSOCIATION OF APARTMENT OWNERS OF

PEARL RIDGE GARDENS AND PEARL RIDGE TOWERS ("PEARL RIDGE")

is a homeowner association organized, existing, and functioning under the laws of

the State of Hawai'i, including HRS §§ 514A and/or 514B, as amended, that

managed the Pearl Ridge condominium project.

7.     Defendants KIAKONA F. H. KAPONO and PORTER MCGUIRE

KIAKONA & CHOW, LLP, formerly known as Porter Tom Quitiquit Chee &

Watts, LLP (collectively, "ATTORNEYS") are licensed attorneys doing business in Hawai'i who acted as the attorneys, agents and/or instrumentalities of PEARL RIDGE in all of the matter complained of herein.

## FACTUAL ALLEGATIONS

8.      A power of sale is a contractual provision that allows a creditor to sell a debtor's home without going to court in the event the debtor defaults on an obligation secured by the home. A power of sale, also referred to as a nonjudicial foreclosure, can be abused with draconian consequences for the homeowner.  As a result, Hawai'i law requires creditors utilizing powers of sale to strictly comply with all requirements of the power of sale and the statutes authorizing their use.

9.      At all times relevant herein, Hawai'i law provided two processes for conducting power of sale or nonjudicial foreclosures. One was the process set forth in HRS §§ 667-5 through 667-10, referred to as Part I, which provided little or no protection for consumers and carried with it the greatest opportunity for abuse. As a result, Part I could only be used if a mortgage contained a power of sale, and then only by a mortgagee, the mortgagee's successor in interest, or a person authorized by the power of sale to act in the premises. The other was Part II, the Alternate Power of Sale Foreclosure Process codified at HRS §§ 667-21 through 667-42. Part II contained significantly greater protections for consumers than Part I.

10.      Before its repeal in 2012, Part I was an expedited power of sale

4

process that could only be used by a creditor holding a mortgage containing a power of sale. To use Part I, the creditor had to give the notices and perform the acts required by the power of sale in the mortgage, publish notice regarding the public sale once a week for three successive weeks, and to hold the public sale no less than 14 days after the last publication. A nonjudicial foreclosure under Part I did not extinguish the debt if the mortgagee did not receive payment of all amounts owed.

11.     In contrast, Part II provided homeowners reasonable time and opportunity to save their homes from foreclosure and protected them from improper and oppressive collection practices. For example, Part II required one intending to proceed with a nonjudicial foreclosure to serve the homeowner with a written notice of default in the same manner as service of process and to provide at least 60 days to cure the default. If the default was not cured, a public sale could occur only after the later of 60 days after distribution of notice of the sale or not less than 14 days after the date of the third public notice of the notice of sale. Moreover, under Part II, the conveyance document had to be signed by the homeowner, and the nonjudicial foreclosure operated as full satisfaction of the debt, even if the foreclosing mortgagee received nothing from the sale proceeds.

12.     Sometime prior to April 5, 2011, PEARL RIDGE engaged ATTORNEYS in a principal-agent relationship to collect common assessments for

the Apartment that were delinquent, and ATTORNEYS filed a notice of lien for

unpaid assessments against the Apartment.

13.    At no time herein did PEARL RIDGE hold a mortgage containing a

power of sale.  Nevertheless, ATTORNEYS, acting as agents for and/or on behalf

of PEARL RIDGE, sent communications to MCCLINTOCK and published notices

in a newspaper representing that PEARL RIDGE was authorized to and would sell

the Apartment at a public sale pursuant to Part I.

14.    On April 5, 2011, ATTORNEYS then conducted a public sale under

Part I and sold the Apartment to a third party, Damon Masatoshi Senaha, for

nominal consideration.  Thereafter, on or about April 14, 2011, ATTORNEYS

filed an affidavit under oath at the Bureau of Conveyances for the State of Hawai`i

certifying compliance with all requirements of Part I.  On or about May 5, 2011,

PEARL RIDGE and/or ATTORNEYS recorded an Association's Quitclaim Deed

in the Bureau of Conveyances conveying the Apartment to Mr. Senaha.  The

Association's Quitclaim Deed stated in pertinent part that PEARL RIDGE had the

right to foreclose its lien and sell the Apartment pursuant to HRS § 514B-146 and

Part I.

15.    At no time did PEARL RIDGE or ATTORNEYS have the right to use

Part I.

16.    PEARL RIDGE and ATTORNEYS used Part I in order to avoid

6

judicial scrutiny which a foreclosure by action would have entailed and/or compliance with the consumer protection provisions contained in Part II.

17.     PEARL RIDGE and ATTORNEYS concealed the wrong being committed by misrepresenting that PEARL RIDGE was authorized to conduct nonjudicial foreclosures or public sales under Part I in communications sent to MCCLINTOCK, notices published in a newspaper, the affidavit filed in the Bureau of Conveyances, and the Association's Quitclaim Deed that was recorded in the Bureau of Conveyances.

18.     The aforesaid communications, notices, affidavit, and deed were false as PEARL RIDGE did not hold a mortgage containing a power of sale as Part I required.

19.     As a member of PEARL RIDGE, MCCLINTOCK was entitled to rely and did rely on the representations made by PEARL RIDGE and/or ATTORNEY concerning the right to use Part I.

20.     MCCLINTOCK could not reasonably have discovered and did not discover that PEARL RIDGE did not have the power of sale required by Part I or the right to use Part I until sometime in 2016.

21.     PEARL RIDGE and ATTORNEYS fraudulently concealed the wrong being committed and the claims that arose in favor of MCCLINTOCK by misrepresenting their authority to use Part I.

7

22.     The statutes of limitations applicable to MCCLINTOCK's claims were tolled by the discovery rule or HRS § 667-20, and to the extent, they were not tolled in that manner MCCLINTOCK requests that equitable tolling be applied.

**COUNT I**
**(Conversion and/or Wrongful Foreclosure)**
**by PEARL RIDGE**

23.     For her first claim for relief, MCCLINTOCK incorporates by reference all of the preceding allegations of this Complaint.

24.     The use of Part I to sell the Apartment was unlawful, wrongful and/or invalid, and constitutes the theft and/or conversion of the Apartment and all of its economic benefits.

25.     MCCLINTOCK was shocked and traumatized by the unlawful sale of the Apartment.  MCCLINTOCK was forced to find an alternative living arrangement on an emergency basis and in the process, was unable to take all of her furniture and possessions out of the Apartment.

26.     PEARL RIDGE was wrongfully and unjustly enriched as a result of the above.

27.     MCCLINTOCK seeks and requests recovery against PEARL RIDGE for the injury she sustained, including rescission, restitution, the disgorgement of unlawful gains, actual, special, general, compensatory and punitive damages, together with costs of court and attorney's fees, and for such further and general

relief to which she may be entitled.

## COUNT II
### (Violation of the Fair Debt Collection Practices Act)
### by ATTORNEYS

28.     MCCLINTOCK hereby incorporates by reference all of the

allegations contained in the preceding paragraphs of this Complaint.

29.     MCCLINTOCK seeks and requests recovery under the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") against

ATTORNEYS.

30.     On information and belief, MCCLINTOCK alleges that at all times

relevant herein, ATTORNEYS were debt collectors, acting as the agent and/or

instrumentality of PEARL RIDGE, who routinely demanded sums of money and

attempted to collect said sums of money by sending letters, publishing notices,

filing affidavits and recording quitclaim deeds falsely stating that they or their

clients were authorized to use Part I to collect delinquent homeowner assessments.

31.     ATTORNEYS violated Section 1692f of the FDCPA, which prohibits

the use of unfair or unconscionable means to collect or attempt to collect any debt

by attempting to collect monies from MCCLINTOCK by using Part I instead of

Part II.

32.     As a result of ATTORNEYS' violations of the FDCPA,

MCCLINTOCK is entitled pursuant to 15 U.S.C. § 1692k to actual damages,

statutory damages, and the costs of this action, together with attorneys' fees.

33.    MCCLINTOCK is aware that on July 9, 2019, Governor David Y. Ige allowed Senate Bill 551, SD1, HD2, CD1 ("SB 551") to become law without his signature.

34.    While SB 551 is to be applied retroactively to any case, action, proceeding, or claim arising out of a nonjudicial foreclosure under Parts I, II and VI, MCCLINTOCK has a good faith belief that SB 551 is unconstitutional and/or fails to abrogate her claim for wrongful foreclosure.

WHEREFORE, MCCLINTOCK prays for a judgment in her favor:

A.    Awarding MCCLINTOCK actual, compensatory, statutory, special, general and punitive damages against PEARL RIDGE and ATTORNEYS as appropriate;

B.    Awarding MCCLINTOCK rescission, restitution and/or disgorgement of the Apartment and the revenue and/or economic benefits that PEARL RIDGE unlawfully and/or wrongfully acquired;

C.    Awarding MCCLINTOCK pre- and post-judgment interest;

D.    Awarding MCCLINTOCK attorneys' fees and costs of suit; and

//

//

//

E.      Awarding MCCLINTOCK such other and further relief as this Court

may deem just and proper.

DATED: Honolulu, Hawai`i, September 11,  2019.

/s/ Timothy E. Ho
STEVEN K.S. CHUNG
MICHAEL L. IOSUA
TIMOTHY E. HO
Attorneys for Plaintiff
MARIA T. MCCLINTOCK

11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARIA T. MCCLINTOCK, | ) | CIVIL NO. |
| | ) | (Wrongful Foreclosure) |
| | ) | |
| Plaintiff, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| ASSOCIATION OF APARTMENT | ) | |
| OWNERS OF PEARL RIDGE | ) | |
| GARDENS AND PEARL RIDGE | ) | |
| TOWERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## DEMAND FOR JURY TRIAL

Comes Now Plaintiff MARIA T. MCCLINTOCK, by and through her

undersigned counsel, and requests a trial by jury on all issues triable of right by

jury in this action.  This demand is made pursuant to Rule 38 of the *Federal Rules*

*of Civil Procedure*.

DATED: Honolulu, Hawai`i, September 11, 2019.

/s/ Timothy E. Ho

STEVEN K.S. CHUNG
MICHAEL L. IOSUA
TIMOTHY E. HO
Attorneys for Plaintiff
MARIA T. MCCLINTOCK